IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WENDELL STUART,

    Petitioner,      No. 2:10-cv-2098 MCE KJN P

    vs.

SINGH,     <u>ORDER</u> and

    Respondent.     <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

    Petitioner is a state prisoner, proceeding without counsel and in forma pauperis, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court is respondent's motion to dismiss the petition on the ground that it is time-barred by the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and for failure to state a cognizable habeas claim. Petitioner filed an opposition to the motion, which includes requests for discovery and an evidentiary hearing (Dkt. No. 13), and respondent filed a reply (Dkt. No. 14).

    For the following reasons, the court denies petitioner's requests and recommends that respondent's motion to dismiss be granted.

////

////

1

I.  BACKGROUND

In 1983, petitioner was sentenced to a term of fifteen-years-to-life plus one year for second degree murder, a weapon use enhancement, kidnapping, and assault with a deadly weapon. (Dkt. No. 10, Exh. 1.) At a disciplinary hearing held November 1, 2007, petitioner was found guilty by a preponderance of the evidence of "the charge of [r]efusing to be searched/ resisting detainment" and "battery on staff," based on a prison incident that occurred on October 7, 2007.[1] (Dkt. No. 10 at 23-25 (Exh. 4); Dkt. No. 1 at 18-20 (Rules Violation Report ("RVR"), Log No. S2-07-10-1089).)[2] The conviction was classified as a Serious Class B offense, and resulted in petitioner's loss of 150 days good-time credit, and referral for a segregated housing assessment. (Dkt. No. 10 at 23, 25, 61.) Petitioner challenged the disciplinary action pursuant to the administrative grievance process, initially stating in pertinent part:

> [I] also request the video of the incident because it may contain details of information to be relied upon in the fact-finding phase. . . . [I request] [t]hat the video be reviewed and that the CDC 115 Finding and Disposition be reheard.

(Dkt. No. 10 at 9 (Exh. 3) (Inmate Appeal Form, Log No. 08-00483).) Petitioner's request to view the subject video and to have his RVR re-heard was denied at the first and second levels, the latter on the ground that "[t]he tape recording was not used as evidence or in the adjudication of the RVR," and "[t]he evidence is compelling in that your resistive behavior caused a battery on staff and the use of force to control your actions." (Dkt. No. 10 at 65-67.) Following the rejection of his grievance at the Second Level Review, petitioner asserted that it was a due process violation to exclude the subject video, which would "prove" that petitioner "didn't 'battery on staff'" (sic). (Id. at 10.) Petitioner's administrative grievance was denied at the final level of review on September 12, 2008. (Dkt. No. 10 at 10, 71.)

---

[1] Despite reference by the Associate Warden, the Solano County District Attorney decided against pressing criminal charges against petitioner. (Dkt. No. 10 at 36.)

[2] Page references reflect the court's electronic pagination.

On December 17, 2008, petitioner filed a petition for writ of habeas corpus in the Solano County Superior Court, alleging that the disciplinary conviction violated his due process and equal protection rights. (Dkt. No. 10, Exh. 4.) That petition was denied on March 2, 2009. (Id., Exh. 5.)

On June 20, 2009, petitioner challenged the disciplinary decision in a petition for writ of habeas corpus filed in the California Court of Appeal. (Id., Exh. 6.) That petition was denied on June 25, 2009. (Id., Exh. 7.)

On July 26, 2009, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, again challenging the disciplinary decision. (Id., Exh. 8.) That petition was summarily denied on September 9, 2009. (Id., Exh. 9.)

Petitioner filed the instant federal petition on August 1, 2010. The petition asserts a denial of petitioner's due process and equal protection rights as a result of the hearing officer "withholding" ("not present[ing]") the subject video evidence. (Dkt. No. 1 at 4.) Petitioner asserts that, had this evidence been admitted at his disciplinary hearing, "the outcome would've been different;" the evidence "would have completely exonerate[d] petitioner," and would "clearly prove[] petitioner did not commit Battery on Staff;" and that "Petitioner is Actually Innocent." (Id. at 4, 7-9, 13.) Petitioner seeks discovery of the video, and an evidentiary hearing on his actual innocence claim. Ultimately, petitioner seeks expungement of the disciplinary conviction and restoration of his lost credits.

Respondent moves to dismiss petitioner's federal petition on the ground that it is time-barred and because petitioner has failed to state a cognizable habeas claim.

II. DISCUSSION

    A. STATUTE OF LIMITATIONS

        1. Legal Standards

AEDPA's one-year statute of limitations, set forth in 28 U.S.C. § 2244, applies to all federal habeas corpus petitions filed by "a person in custody pursuant to the judgment of a

3

State court," 28 U.S.C. § 2244(d)(1), "even if the petition challenges a pertinent administrative decision rather than a state court judgment," Shelby v. Bartlett, 391 F.3d 1061, 1063 (9th Cir. 2004). When a habeas petitioner challenges an administrative decision, § 2244(d)(1)(D) governs the date on which the statute of limitations begins to run, that is, "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[3] Where the petitioner is challenging a prison disciplinary conviction, the statute of limitations begins to run when petitioner's final administrative appeal is denied. Shelby, 391 F.3d at 1066; see also Redd v. McGrath, 343 F.3d 1077, 1079 (9th Cir. 2003) (assuming without deciding that the AEDPA statute of limitations applies to collateral attacks on parole board decisions).

      The limitation period is statutorily tolled during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . . ." 28 U.S.C. § 2244(d)(2). Moreover, "[t]he period between a California lower court's denial of review and the filing of an original petition in a higher court is tolled -- because it is part of a single round of habeas relief -- so long as the filing is timely under California law." Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010).

      The limitations period may be equitably tolled if petitioner establishes that he diligently pursued his rights but some extraordinary circumstance stood in his way. Raspberry v. Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006) (citations and internal quotation marks omitted).

---

[3] 28 U.S.C. § 2244(d)(1)(D) provides:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of . . .

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Although the statute provides other means for assessing the commencement of the limitation period, 28 U.S.C. § 2244(d)(1), none are pertinent here.

4

"[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. . . . The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the rule." Lakey v. Hickman, 633 F.3d 782, 786 (9th Cir. 2011) (citations and internal quotation marks omitted).

        2. Application

In the present case, AEDPA's statute of limitations began to run upon the final denial of petitioner's administrative appeal challenging his disciplinary conviction, that is, on September 12, 2008. (Dkt. No. 10 at 10, 71.) The one-year limitation period commenced the following day, on September 13, 2008. Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a) ("exclude the day of the event that triggers the period")). Thus, absent statutory and/or equitable tolling, the last day on which petitioner could timely file a federal petition was September 12, 2009.

The limitations period ran for 96 days until petitioner filed his superior court petition on December 17, 2008, whereupon it was tolled until the California Supreme Court denied petitioner's petition on September 9, 2009. 28 U.S.C. § 2244(d)(2); Banjo, supra, 614 F.3d at 968.

After the California Supreme Court's denial on September 9, 2009, petitioner waited 326 days before filing the instant federal petition on August 1, 2010, during which time there was not further tolling of the statute of limitations. Thus, excluding the period of statutory tolling during the pendency of petitioner's state habeas petitions, a total of 422 days (96 days plus 326 days) elapsed before petitioner filed the instant federal petition, clearly outside of AEDPA's one-year limitations period.

Petitioner does not dispute these facts, and does not assert a basis for finding equitable tolling per se, but contends that he should be excused from the untimely filing of his federal petition because he is "actually innocent" of the disputed rule violation.

### 3. Petitioner's Assertion of Actual Innocence

Petitioner contends that he should be excused from the admittedly untimely filing of his federal petition because he is "actually innocent" of the disputed rule violation, citing Schlup v. Delo, 513 U.S. 298 (1995). Schlup (decided before the enactment of AEDPA) created an actual innocence exception to the limitations period on second or successive habeas petitions. Under Schlup, a petitioner's "otherwise-barred claims [may be] considered on the merits . . . if his claim of actual innocence is sufficient to bring him within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" Carriger v. Stewart, 132 F.3d 463, 477 (9th Cir. 1997) (en banc) (quoting Schlup, 513 U.S. at 315).

Currently pending before the Ninth Circuit Court of Appeals is the question whether the actual innocence exception may be applied to an original habeas petition, as presented by petitioner herein. In Lee v. Lampert, 610 F.3d 1125 (9th Cir. 2010), the Ninth Circuit agreed with four other circuits that the Schlup actual innocence exception does not override AEDPA's statute of limitations. The court relied on the omission of "actual innocence" from the enumerated exceptions of Section 2244(d), which sets forth the statute of limitations for original petitions, in comparison to the "explicit enumeration of an actual innocence exception in . . . section 2244(b)(2)(B), which governs the filing of second or successive habeas petitions." Lee, 610 F.3d at 1130. However, on February 08, 2011, the Ninth Circuit granted rehearing en banc in Lee, which was held on March 23, 2011; supplemental briefs were filed in April 2011. A decision remains pending as of the filing date of these findings and recommendations. See Lee v. Lampert, 633 F.3d 1176 (granting rehearing en banc); Ninth Circuit Case No. 09-35276 (docket). Thus, it remains unclear within the Ninth Circuit whether the actual innocence exception may be applied to petitioner's original habeas petition.

A further problem with petitioner's actual innocence claim is the lack of clarity whether the exception may be applied to a prison disciplinary conviction. While this court has identified some cases in which the Schlup actual innocence exception has been applied in

6

evaluating a challenge to a prison disciplinary decision,[4] the court has found no clear ruling within this circuit to support such an application.

Even assuming application of the actual innocence exception to an original federal habeas petition challenging a prison disciplinary conviction, petitioner has failed to meet the "stringent showing required by this exception." House v. Bell, 547 U.S. 518, 522 (2006). Access to the "Schlup gateway" requires a showing, in light of all the evidence, including the new evidence not previously introduced, that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Id. at 324.

In his opposition to the motion to dismiss, petitioner asserts that the subject video would support his assertion that he did not resist staff during the subject incident, but that his legs gave out on him during the encounter due to his "mobility impairment (weak knees)." (Dkt. No. 13 at 2-3, 5-6.) Petitioner avers that "[t]he prison guard that was conducting a search of petitioner misinterpreted the incident." (Id. at 6.) Petitioner also asserts that the hearing officer improperly denied the admission of petitioner's "medical progress notes showing that petitioner has a history of weak knees." (Dkt. No. 13 at 6.) Petitioner has submitted copies of medical

---

[4] See e.g. Parmelee v. Fraker, 2010 WL 546933, *9 (W.D. Wash. 2010) (applying Schlup to find that petitioner "presents no new evidence demonstrating that it is more likely than not that no reasonable hearing officer would have convicted him in light of new evidence"); Amie v. Kirkland, 2009 WL 414584, *7 (E.D. Cal. 2009), adopted 2009 WL 800197 (E.D. Cal. 2009) (applying Schlup to conclude that petitioner "has failed to demonstrate that no reasonable juror would have found him guilty of battery with serious bodily injury [the challenged disciplinary decision] by a preponderance of the evidence"); Doyle v. Abbott, 330 Fed. Appx. 703, 708 (10th Cir. 2009) (rejecting petitioner's claim that he was actually innocent of disciplinary conviction because he had "presented no 'new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial[,]'" quoting Schlup, 513 U.S. at 324); Turner v. Thaler, 2010 WL 816730, *4 (S.D. Tex. 2010) (finding that petitioner had not demonstrated actual innocence of disciplinary conviction, relying on Schlup standards).

records which include physician notes that plaintiff complained of knee pain in August and September 2007 (id. at 14, 16); the results of an August 2007 x-ray of plaintiff's right knee, indicating "[p]osterior calcification which could be interarticular" (id. at 10); and the results of an August 2008 MRI of plaintiff's right knee, indicating a probable tear of the meniscus, and a partial tear or strain of the anterior cruciate ligament (id. at 12). Petitioner asserts that the video is his "main or key witness," that would rebut the "credibility" of the single photograph presented at the hearing, which depicted the injuries sustained by Correctional Officer Mata during the incident. (Dkt. No. 1 at 10.)

Review of the disciplinary decision and underlying documents demonstrates not only that petitioner waived any right to inclusion of the video at the disciplinary hearing, but that its exclusion did not result in a fundamental miscarriage of justice. Schlup, 513 U.S. at 315.

Petitioner made a deliberate decision to refrain from participating in the investigation of the incident, and only marginally participated in the disciplinary hearing. Immediately after the incident, petitioner refused to give any statement, and refused to sign a statement that he had been informed of his Miranda rights, denying that he understood such rights. (Dkt. No. 10 at 33-34.) Additionally, petitioner was noted to be "ambulatory" for his medical evaluation. (Id. at 34-35.)

Thereafter, petitioner refused to cooperate with either of the two Investigative Employees ("IE") assigned to the case, including a refusal to respond to either IE's questions whether petitioner perceived any inconsistencies in the RVR, whether any pertinent information or issues had been excluded, whether petitioner wanted to give a statement, and whether petitioner requested the participation of any witnesses. (Dkt. No. 10 at 28-31.)

At the hearing, petitioner "did not object to proceeding with the hearing," and "elected not to postpone his hearing pending the outcome of the D.A. referral. . . ." (Dkt. No. 10 at 24.) Petitioner "acknowledged his rights[,] . . . elected to continue with the hearing[,] [and] . . . did not request to have any witnesses present at the hearing." (Id.) Petitioner did, however,

"den[y] the charges stating, 'My knees gave out I went to the ground. I want to remain silent.'" (Id.) The adverse hearing decision was supported by the statements of correctional officers Mata, Wullenwaber, Johnson, Robinson and Chavez. (Dkt. No. 10 at 26-27, 43-55.)

Petitioner's reliance on the video has increased over time. In his initial administrative grievance, filed November 29, 2007, petitioner did not assert actual innocence, or that he had been denied a request to admit the video at the disciplinary hearing, only that he "request[ed] to see the video . . . because it *may* contain details of information to be relied upon in the fact-finding phase," and that he had "the right to see all available evidence." (Dkt. No. 10 at 9, 11 (emphasis added, internal quotation marks omitted).) By the time petitioner requested a Director's Level Review, on May 21, 2008, he asserted that he "didn't 'Battery on Staff' and the video will prove it." (Id. at 10.) In his petition for writ of habeas corpus filed in this court on August 6, 2010, petitioner stated that "the Senior Hearing Officer was Bias[ed] when the S.H.O. withheld a video camera footage that caught the entire incident and would have completely exonerated[d] petitioner . . ." (Dkt. No. 1 at 7-8.)

This increasing reliance on the alleged contents of the video, in contrast to petitioner's initial failure to assert his innocence or attempt to prove it pursuant to the fact-finding process, generally undermines petitioner's credibility. This sequence of events in turn undermines petitioner's assertion that the video would provide "new reliable evidence," Schlup, 513 U.S. at 324, supporting petitioner's alleged defense. The medical evidence submitted by petitioner does not otherwise persuade the court— while the objective findings support petitioner's complaints of pain, there is no record that petitioner complained of leg weakness or that his legs had previously "given out;" moreover, petitioner was able to walk to his physical exam after the incident.

Judicial review of the sufficiency of evidence to support prison disciplinary decisions is made pursuant to a "some evidence" standard, a standard that does not require "examination of the entire record, independent assessment of the credibility of witnesses or

weighing of the evidence." Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 455 (1985). Rather, the question is simply "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. Here, the statements of the four reporting correctional officers clearly support the challenged disciplinary decision.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Rather, an institutional disciplinary proceeding meets due process standards when an inmate receives: (1) advance written notice of the disciplinary charge; (2) an opportunity, consistent with the institutional safety and correctional goals, to present witnesses and documentary evidence; and (3) a written statement of the evidence relied on and the reasons for any disciplinary action. Wolff, 418 U.S. at 563-67. If these requirements are met, and there is "some evidence" to support the decision, then procedural due process has been provided. Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 454 (1985).

These principles were fully considered pursuant the Director's Level rejection of petitioner's administrative grievance (Dkt. No. 10 at 71 (emphasis added)):

> *There is no reliable information to support the assumption that a videotape captured the incident or that a videotape contained clear images that would benefit the finding of truth in the hearing.* The videotape was not used as evidence against the appellant in the hearing; therefore, he has no right to view the videotape. The administrative hearing of the serious RVR does not afford the appellant the same rights that a court hearing would provide. The appellant refused the assistance of the assigned investigative employee[s]. A review of the documents submitted with the appellant's appeal reflects that he was afforded appropriate regulatory protections in the hearing of the RVR. The charge is substantiated by a preponderance of the evidence, and the disposition is consistent with controlling rules and regulations.

Similarly, in denying petitioner's first petition for writ of habeas corpus, the Solano County Superior Court reasoned in pertinent part (Dkt. No. 10 at 73-76 (Exh. 5) (emphasis added)):

> *Even if this Court was to assume, for the sake of argument, that a videotape existed . . . Petitioner fails to demonstrate that the alleged violations resulted in prejudice.* [Citations omitted.] Other than his unsupported speculation that video footage might contain something to aid his defense, Petitioner provides no basis to conclude that the outcome of his disciplinary hearing would have been different had some form of video evidence been reviewed. It is uncontested that officers attempted to search him for contraband; that an altercation ensued; that Officer Mata eventually took Petitioner to the ground; and that Officer Mata sustained some minor injuries. It is unlikely that any footage from a general surveillance camera would have recorded the altercation with the resolution and clarity necessary to completely undermine the testimonies of the officers involved. . . . [¶ ] *There is more than [a] mere modicum of evidence necessary to uphold a prison disciplinary decision.* Superintendent, Mass. Corr. Inst., Walpole v. Hill (1985) 472 U.S. 445, 455.)

These decisions are consistent with the findings of the undersigned that petitioner was accorded, at the subject disciplinary hearing, all the procedural due process to which he was entitled, that the decision was amply supported by "some evidence," and that petitioner has failed to demonstrate that exclusion of the subject video resulted in a "fundamental miscarriage of justice" warranting application of the actual innocence exception to petitioner's otherwise time-barred habeas petition. Stated differently, even if petitioner were able to clear the legal hurdles permitting application of the actual innocence exception to an original federal habeas petition challenging a prison disciplinary conviction, petitioner has failed to meet the "stringent showing" required by the exception. House v. Bell, supra, 547 U.S. at 522. Accordingly, the court finds that the instant federal habeas petition is barred by AEDPA's statute of limitations. This conclusion renders moot petitioner's requests for discovery of the video and an evidentiary hearing.

B. FAILURE TO STATE A COGNIZABLE HABEAS CLAIM

Respondent next contends that, even if the instant petition was deemed timely filed, petitioner has failed to state a cognizable claim for federal habeas relief because he has not demonstrated that success on his claim—expungement of the subject disciplinary conviction and restoration of the lost credits—would necessarily impact the duration of petitioner's confinement.

Petitioner responds that success on his claim would "necessarily impact the duration of his sentence." (Dkt. No. 13 at 7.) Petitioner explains that "[h]ere the parole board is denying him parole and not finding [petitioner] suitable for parole because of the RVR that's impacting his parole eligibility. The board sets a base term confinement, and has the discretion to shorten that term through a separate post conviction credit scheme." (Id.)

This court has jurisdiction to consider habeas petitions where the petitioner is "in custody pursuant to the judgment of a State court," and alleges that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition for writ of habeas corpus is appropriate for seeking not only immediate release from unlawful confinement, but to obtain future releases. Preiser v. Rodriguez, 411 U.S. 475, 487 (1973). If restoration of a prisoner's "good-conduct-time credits" would shorten the length of his confinement, then a suit premised on this claim would be "within the core of habeas corpus in attacking the very duration of [the prisoner's] physical confinement itself." Id. at 487-88. More narrowly, within this circuit, it has been held that "[h]abeas corpus jurisdiction . . . exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989); see also Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) ("[W]e understand Bostic's use of the term 'likely' to identify claims with a sufficient nexus to the length of imprisonment so as to implicate, but not fall squarely within, the 'core' challenges identified by the Preiser Court."); cf. Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003) ("habeas jurisdiction is absent . . . where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence").

Respondent contends that plaintiff has failed to state a cognizable habeas claim because the subject disciplinary conviction has "had no impact on the fact or duration of [petitioner's] incarceration," and therefore success on petitioner's challenge "would not necessarily impact the duration of his sentence," citing Wilkinson v. Dotson, 544 U.S. 74, 82

1  (2005) (only a claim that "would necessarily spell [a] speedier release" lies at "'the core of
2  habeas corpus'") (quoting Preiser, supra, 411 U.S. at 489).  Respondent argues that petitioner
3  was initially sentenced to both determinate and indeterminate sentences; that petitioner was
4  required to serve his determinate sentence first (Cal. Pen. Code § 669); that petitioner
5  commenced serving his indeterminate ("life") sentence in 1982;[5] that petitioner's "minimum
6  eligible parole date" ("MEPD") passed in 1992;[6] and that, once petitioner's MEPD passed, any
7  loss of behavior credits has had no impact on the duration of petitioner's confinement.  (Dkt. No.
8  10 at 5-6.)

        The court finds respondent's contention meritorious, but for somewhat different
reasons.  A prisoner's institutional conduct may impact his release date at all stages of his
confinement, although the extent of that impact becomes more attenuated over time.  Statutory
behavior credits ("good conduct credits") are calculated by a specific number of days, which may
be applied to advance a life prisoner's MEPD, as determined by the California Department of
Corrections and Rehabilitation ("CDCR").  Cal. Pen. Code §§ 2930 et seq.; Cal. Code Regs., tit.
15, § 2400.  The application of these credits is specific, calculated on a day-by-day basis.
However, once the Board of Parole Hearings finds a prisoner suitable for parole, and sets a "base
term" pursuant to the appropriate matrix, including consideration of aggravating and mitigating
circumstances, and adjustments for enhancements or other offenses, Cal. Code Regs., tit. 15, §§
2402-09, 2411, a life prisoner may only "earn postconviction credit for each year spent in state
prison," id., § 2410.  Post-conviction credit may be applied up to "4 months for each year
served," provided, in pertinent part, that the prisoner has "behave[d] in a disciplinary-free
manner."  Id.  Several other significant factors are also to be considered in determining a

---

[5] Initial calculations set the commencement of petitioner's life term on January 12, 1982 (Dkt. No. 10 at 5 (Exh. 2)); recalculation of petitioner's life term in 2008 indicates a commencement date of February 19, 1982 (id. at 7).

[6] Initial calculations set petitioner's MEPD as January 13, 1992 (Dkt. No. 10 at 5 (Exh. 2)); recalculation of petitioner's life term in 2008 indicates a MEPD of July 10, 1992 (id. at 7).

13

prisoner's suitability for parole. Id., § 2402. Hence, post-conviction credits based on a prisoner's good behavior is more general both in assessment and application than that of pre-MEPD behavior credits. Additionally, if there is a period of time between a prisoner's MEPD and the setting of his base term, the prisoner's institutional behavior will be generally considered by the Board as one of several factors in determining parole suitability. Id., § 2402; see generally Cal. Code Regs., tit. 15, § 2400 et seq., Cal. Pen. Code § 2930 et seq., § 3041.

As noted by the California Supreme Court, "for convicted murderers . . . who are sentenced to an indeterminate term, the connection between [behavioral] credits and actual release is greatly attenuated. Inmates sentenced to an indeterminate term generally do not receive Penal Code section 2933 credits and to the extent those inmates do receive credits towards their sentence, the credits go only towards advancing their minimum eligible release date, not their actual release from prison. . . . Deciding when to actually release an inmate serving an indeterminate term is governed by different rules and regulations." In re Jenkins (2010) 50 Cal.4th 1167, 1179-1180 (concluding that the rules governing worktime credits do not apply to classification decisions), citing In re Monigold (1988) 205 Cal. App. 3d 1224, 1227; In re Dayan (1991) 231 Cal. App. 3d 184; and In re Rosenkrantz (2002) 29 Cal. 4th 616, 653–54. Thus, "[i]f a prisoner's incarceration time passes his MEPD, and he has yet to be found eligible for parole, computation of [behavior] time credits is meaningless -- he will be released if and when found eligible, and then only after a computation of a release date under Board matrices." Cole v. Horel, 2007 WL 2221060, *4 (E.D. Cal. 2007) (Findings and Recommendations in Case No. 2:06-cv-0850 MCE GGH P, adopted by District Judge on Aug. 30, 2007.) Stated differently, "the credits that Petitioner is statutorily entitled to earn as a life prisoner have no direct impact on the amount of time he must actually serve until the Board determines he is suitable for parole and assigns him a parole release date." Bowens v. Sisto, 2011 WL 2198322, *13 (E.D. Cal. 2011) (Findings and Recommendations in Case No. 2:08-cv-01489 LKK CHS P, pending before District Judge).


In the present case, there is no evidence in the record that petitioner has been found suitable for parole, that is, that the Board of Parole Hearings has established a base term parole release date. Rather, it appears that petitioner has passed his MEPD and, although he awaits his ninth hearing before the Board, continues to await a finding of parole suitability. (Dkt. No. 10 at 7 (Exh. 2).) Petitioner has not yet had a parole suitability hearing which actually considered the impact of the subject disciplinary conviction. Petitioner's last parole hearing was in January 2006, prior to the subject incident and conviction. (Dkt. No. 10 at 6 (Exh. 2).) Moreover, petitioner voluntarily waived his parole hearing scheduled for January 2009. (Id. at 7.) Petitioner's next parole hearing is scheduled for January 2012 (id.), when the subject disciplinary conviction may or may not influence the Board's assessment of petitioner's parole suitability. Thus, any impact that the challenged conviction may have on the duration of petitioner's confinement is merely speculative.

Some courts, confronted with similar circumstances, have concluded that a petitioner's inability to demonstrate that success on his challenge to a disciplinary conviction would "likely accelerate" his eligibility for parole, Bostic, 884 F.2d at 1269, or "potentially affect the duration of [his] confinement," Docken, 393 F.3d at 1031, requires a finding that the court lacks jurisdiction to consider the claim. See e.g. Rhodes v. Evans, Case No. 2:09-1842 JAM EFB P (E.D. Cal. Apr. 4, 2011) (Dkt. No. 20 (district judge held that "the link between the disciplinary decision [petitioner] challenges and the possibility that he would be denied parole rather than granted is too strained to support federal habeas jurisdiction in this case")).[7] Other courts have concluded that such speculative assertions are not ripe for adjudication. See e.g. Stinson v. Sullivan, 2008 WL 115124, *2 (E.D. Cal. 2008) (Case No. 1:07-cv-1311 LJO SMS

---

[7] There is, however, a split of authority in this circuit's district courts whether such challenges to prison disciplinary decisions are cognizable under the federal courts' habeas jurisdiction. See cases cited in Aquiar v. Haviland, 2011 WL 2066762,* 3, Case No. 2:10-cv-2059 JAM KJN P (findings and recommendations filed May 23, 2011, pending district judge review).

HC) (findings and recommendations, adopted by district judge, that "no case or controversy currently exists, and there is a real likelihood that Petitioner's claim will never present a case or controversy"). Under either analysis, the clearly speculative nature of petitioner's challenge, premised on a future decision of the Board of Parole Hearings, fails to state a cognizable federal habeas claim.

III. CONCLUSION

For the forgoing reasons, the court finds that the instant petition is barred by ADEPA's statute of limitations, and fails to state a cognizable federal habeas claim.

Accordingly, IT IS HEREBY ORDERED that petitioner's requests for an evidentiary hearing and for discovery, contained in his opposition to the motion to dismiss (Dkt. No. 13), are denied.

Additionally, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss the petition be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). A certificate of appealability may issue

////

under 28 U.S.C. §2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

DATED: July 13, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

stua2098.mtd.hc